Garrett *v.* Stevenson *et al.*

AUGUSTUS O. GARRETT, appellant, *v.* ANDREW STEVENSON *et al.* appellees.

*Appeal from Tazewell.*

A contract for mechanic's labor was made on the 3d day of March, A. D. 1840, the la or commenced and continued until July 1, 1840. A petition for a lien was filed October 27, 1841, in the Peoria Circuit Court, from which the venue was changed to the Tazewell Circuit Court, and there tried at the April term 1846, when a verdict was rendered for the petitioners. The *"Act to provide for securing to mechanics' and others, liens for the value of labor and materials,"* by virtue of the 19th section of the 3d Article of the Constitution, became a law, December 10, 1839: *Held*, that, by the terms of this law in force when the contract was made, no limitation in point of time is fixed upon the right of the creditor to enforce the lien created by it, as against the debtor merely; and, therefore, that the right of the petitioners was in no wise affected by their delay to institute legal proceedings to enforce their lien.

An answer to a petition for a mechanic's lien, so far as the same is responsive thereto, is proper evidence for the consideration of the jury.

A decree on a petition for a mechanic's lien can only affect whatever legal and equitable interest the defendant has in the premises, when such interest is less than a fee simple estate.

PETITION for a mechanic's lien, filed by the appellees against the appellant, in the Peoria Circuit Court, on the 27th day of October, A. D. 1841, where the cause was brought to an issue, but the venue was changed to Tazewell county in October, 1844, and, after being continued from term to term, was finally determined at the April term 1846, of the Circuit Court in said county, the Hon. Samuel H. Treat presiding. The issue was submitted by the Court to a jury, a special verdict returned in favor of the petitioners for $2,595·20, and the Court rendered a judgment thereon, less $515·76, against the said Garrett.

*A. Lincoln*, and *H. O. Merriman*, for the appellant.

*O. Peters*, and *L. B. Knowlton*, for the appellees.

The Opinion of the Court was delivered by

THOMAS, J. This suit was originally commenced in the Circuit Court of Peoria county in October, 1841, by Ste-

venson & Wardwell against A. O. Garrett to enforce a mechanic's lien, and afterwards taken by change of venue into the Tazewell Circuit Court, and there disposed of by the rendition of a decree against the said defendant. From thence it comes by appeal into this Court.

In dragging its slow length along, from its inception to its termination, it necessarily accumulated much matter by the way. Accordingly, its history is exhibited to us, swollen into a very voluminous record; but in tracing that history through all its various stages, it is found to present no question for our adjudication, growing out of any proceeding intermediate, between the commencement of the suit and the trial resulting in the decree now complained of. The appellant denies the right of his adversaries, at the time when they commenced their action, and under the circumstances of the case, to the remedy sought for by it, and insists, if overruled in that respect, that in the proceedings of the Circuit Court of Tazewell county, on the trial of the cause, and in the rendition of the decree, there will be found such error as to require the reversal of that decree.

This denial by the appellant of the appellees' right to the enforcement of a specific lien upon the premises described in the petition, involves no controversy as to matters of fact. But, assuming the law, entitled *"An Act for the benefit of mechanics,"* approved February 22d, 1833, to have been in force when the contract was made, under which the lien is claimed, he contends that they cannot now avail themselves of the benefit of such lien, because the suit for that purpose was not commenced within three months from the time that payment should have been made, by virtue of said contract, as required by the second section of the law referred to, in cases arising under its provisions. Gale's Stat. 461.

But this is an erroneous view of the subject. The law relied upon as governing and controlling the rights and obligations of the parties, under their contract, was not in existence on the 3d of March, 1840, when that contract was made. It had then been repealed by the law, entitled *"An Act to provide for securing to mechanics and others, liens*

*for the value of labor and materials,"* found on page 147 of the Laws of 1839–40.

That law was passed by the General Assembly at their session of 1838–9, and had it received the necessary Constitutional sanction, would, by its own provision, have gone into effect on the first day of May, 1839. But it did not receive such sanction, and consequently its operation was for a time suspended. From the certificate of the Secretary of State attached to the law, it appears that ten days did not intervene between the time when' the bill was laid before the Council of Revision, and the adjournment of the General Assembly; and that the said bill not having been returned with the objections of the Council on the first day of the next ensuing session of the General Assembly, it had then, (on the 10th day of December, 1839, the second day of the last mentioned session of the General Assembly,) become a law. Such was the Constitutional result. State Const. Art. III, § 19.

Therefore, as by the terms of this law, thus shown to have been in force when the contract out of which this suit originated was made, no limitation in point of time is fixed upon the right of the creditor to enforce the lien created by it as against his debtor merely, it follows, that the right of the petitioners in this case to the enforcement of the lien claimed by them was in no wise affected by the delay on their part, in the institution of their proceedings for that purpose.

It may here be remarked, that between this view of the subject and the decision of this Court in *Turney* v. *Saunders,* 4 Scam. 527, there is no conflict, as assumed by the counsel for the appellant in argument. The question settled in this case did not arise in that. It is there only determined, that where work was commenced under a contract entered into before the law of 1839 took effect, but not completed until afterwards, neither the lien, created thereby under the operation of the law of 1833, in force when the contract was made, nor the right to enforce it, was in any wise affected by the repeal of said last mentioned law. But as the right of action was inchoate and imperfect when the law of '33

was superseded by that of '39, they hold in recognition of a well established principle, that while the right is conferred by the former, and exists subject to all the limitations and restrictions imposed upon it thereby, the remedy must of necessity, be sought under the latter. The record in that case shows, that the work, commenced in October, 1839, was not completed until August, 1841, and that the suit was commenced in October, 1841, and within the time prescribed by the law of 1833. Had the fact in that respect been otherwise, the principle above referred to would have required a different result. The limitation upon the "right" of the plaintiff to sue, and the "liability" of the defendant to be sued, imposed by the law creating such "right and liability," was, on the repeal of that law, continued as the inseparable concomitant of such "right and liability." By its disregard, they would be materially affected, beneficially to the plaintiff, and to the defendant's prejudice. This, the repealing law provided should not be done. Laws 1839–40, 150, § 28.

Having thus shown that the appellees' right to the remedy sought by them in the institution of this suit, was not barred by the lapse of time, I now proceed to inquire, whether there was any error in the proceedings of the Court, allowing him such remedy, either in the extent, or manner of its allowance.

The appellees filed their petition and amended petition, against the appellant and his wife, Mary G. Garrett, seeking to enforce a mechanic's lien upon certain lots in the town of Peoria, for materials furnished, and work done by them, as they alleged, in and about the erection of a house on said lots, under a contract with said appellant.

The appellant and his co-defendant answered said petition and amended petition, denying all of the material allegations therein contained, except as to the execution of the contract aforesaid, and the former (the appellant,) in his answer claimed to have made large payments to the appellees under said contract; and to be entitled to set off against their demands, a large sum of money for damages sustained by him,

Garrett v. Stevenson et al.

as he alleged, by reason of the unskilful and unworkmanlike manner in which the appellees had done their work, &c. and called upon the appellees to answer certain interrogatories in his said answer contained, touching his said claim of payment and set-off. The appellees answered said interrogatories, (as will hereinafter be more fully shown,) and replied generally to the answers of appellant and wife; and issue being formed on these pleadings, a jury was impaneled for their trial. They, having heard the proofs and allegations of the parties, found the following special verdict, to wit:

*First.* That the brick work was done in a workmanlike manner, and amounted to 682,098 brick.

*Second.* That the plastering was done in a workmanlike manner, and amounted to 6,112 yards.

*Third.* That the defendant, Garrett, is entitled to credits to the sum of $1776 00.

*Fourth.* That the complainants are entitled to the further sum of $100·00, for furring, and $135·00 for stone wall, and lathing, &c. $168·37.

*Fifth.* That the complainants fulfilled the contract on their part, and that the defendant, Garrett, failed to perform his part of the contract, in furnishing materials and making payments; and on the whole case, we find that Augustus O. Garrett is indebted to the complainants, for materials furnished and labor performed, under the contract, and on the lots of ground mentioned in the pleadings, in the sum (including interest,) of $2595·20.

The appellant, thereupon, entered successively his motions for a new trial, and in arrest of judgment, which were overruled, and he excepted.

The Court then, deducting from the amount found by the jury the sum of $514·86, for the value and interest thereon of 11,598 brick and 1712 yards of plastering, as having been allowed by the jury to the appellees, beyond the amount claimed by them in their pleadings, rendered a decree against the appellant for the balance of £2,080·34, and decreed a lien in favor of appellees upon the legal and equitable estate and interest of the appellant in and to the lots described in the

pleadings, and that the same be sold for the payment of the amount of said decree, &c. That decree the appellant now brings into this Court for revision, and assigns the following errors, to wit: that the Court erred,

1. In refusing to instruct the jury, on request of appellant's counsel, that appellant's answer was evidence of the payments therein alleged.

2. In refusing to give instructions to the jury as asked by appellant's counsel.

3. In refusing to grant a new trial.

In rendering judgment against appellant.

4. When the verdict was not sufficient to establish the allegations of the pleadings on the part of the appellees.

5. When the certificate of the clerk of the Peoria Circuit Court did not identify the pleadings in this case.

6. When the verdict did not conform to the issues joined and was contrary thereto, and contrary to the case made by the appellees.

7. When material issues had not been found, and there was no finding as to Mary G. Garrett.

8. When the petition and amended petition did not show that appellees were entitled to any lien on the premises claimed.

9. When the verdict allowed appellees for more work and materials than they claimed in the pleadings under the contract.

10. When the balance of payments made and proved by appellant was not deducted by the Court from the amount of the judgment.

11. In overruling appellant's motion in arrest of judgment.

12. In rendering judgment against appellant without disposing of his co-defendant.

13. In not showing in the judgment what interest or estate the appellant had in the premises, nor what estate should be sold.

14. General assignment.

The questions arising on these assignments of error, involv-

Garrett *v.* Stevenson *et al.*

ing as they do the correctness of the proceedings on the trial of the cause, and the validity of its results, would seem to demand for their proper understanding and correct solution, a thorough examination of the record not only as to matters put in issue by the pleadings of the parties, but also as to the testimony introduced by them *pro* and *con* upon such issues. But it is not so. The case comes before us in such an attitude as necessarily to confine our investigations within much narrower limits. In a bill of exceptions taken upon the trial, the sufficiency of the appellees' testimony to sustain the verdict, except as to the appellees' account, distinctly appears by the admissions of the appellant. As to that point, therefore, no examination need be made.

I will now proceed to consider and dispose of the assignment of errors, but not in the order in which they are made.

The refusal of the Circuit Court to instruct the jury on application of appellant's counsel, that appellant's answer was evidence of the payments therein alleged, constitutes the basis of the first and second errors assigned. Its efficacy for such purpose is, therefore, the question involved in these assignments of error. That it was evidence in the particular referred to, if responsive to the appellees' petition, is expressly settled by this Court, in *Kimball* v. *Cook*, 1 Gilman, 434. Then was it so responsive? We will see.

The appellees base their right of recovery, not upon their completion or fulfilment of the contract on their part, but upon the alleged fact, that after they had commenced the work under their said contract, and when, being ready and willing on their part to prosecute and finish it, they were progressing towards its completion, they were compelled to abandon it by reason of the appellant's refusal to pay them therefor from time to time as payments became due to them according to the terms of said contract. In their petition they say: "Your complainants commenced working for said Garrett, according to the terms of the contract, and continued to work for said Garrett till long after the time he had refused to pay them, (your complainants,) according to

the terms and conditions of the written contract above reci-
ted," &c., and pray that "he may be summoned to answer
to this bill, and each fact therein contained."

In their amended petition, they use the following language,
to wit: "And your orators say they were always ready, and
willing, and desirous of proceeding in the erection and com-
pletion of said building, and were always provided with
workmen and materials, as they were required to do by the
terms of said contract; but the said Garrett, at all times,
from the time of making and entering into said contract,
neglected and refused to pay to your orators the money due
to your orators for the work, labor, and materials, done and
performed, and furnished by your orators for said Garrett, as
aforesaid, as he was required to do by said contract, though
your orators often requiring and demanding payment of said
Garrett, during the time when they were in the performance
of said labor, and often thereafter." And again they say:
"And the said Garrett has not paid your orators for their work,
labor and materials done and furnished as aforesaid, though
the same long since became due and payable, to wit: on the
1st day of July, 1840, and though often required so to do by
your orators, but the same remains due and unpaid." And
this amended petition concludes by requiring the appellant
"to answer the petition and amended petition." How, then,
any one can doubt that the allegations of payment in appel-
lant's answer are responsive to the allegations of the appellees,
in their petition and amended petition, that he had not paid,
I cannot conceive. He is called upon to answer "each fact"
stated in the petition, and his non-payment of the money
becoming due from him under the contract is one of the
alleged "facts" therein stated, and, as I think, of all others
the most important, as not only affecting the appellees' right
of action, but also limiting the extent of their demand. Nor
can it be said that the exhibition by the appellant of his bill
of particulars, showing specifically each item of payment
claimed to have been made by him, any the less entitled the
answer to admissibility in evidence than it otherwise would
have been. Why, exceptions might well have been taken

Garrett *v.* Stevenson *et al.*

to the answer, as not responding to all the material allega-
tions of the petition, if it had been silent as to payments by
appellant, and if answering as to that point in general terms,
that he had made payments, and not accompanying his
answer by a bill of particulars, he would have been com-
pelled, on appellee's request, to file one. Therefore, tried
by that test, (and it is an unerring one,) the answer was
legal evidence of the allegations of payment made by it.

But as to the claims set up by appellant in his answer, of
a set-off for damages sustained by him on account of the un-
skilful and unworkmanlike manner in which, as he alleges,
the appellees performed their work, &c. it is otherwise.
These allegations, not being responsive to the petition, fur-
nished no intrinsic evidence of their own truth, and there-
fore the answer, for the purpose of proving such demand, was
not admissible in evidence.

This case furnishes an illustration of the rule laid down
by this Court in *Webb* v. *Lasater*, 4 Scam. 547, the correct-
ness of which is now recognized. The Court there, in
speaking of the extent to which the answer of a party to a
suit commenced before a justice of the peace, when called
upon by his adversary to testify, according to the statute in
such case made and provided, may and should be received
as evidence on the trial of such suit, say: "Like a defendant
in a bill of discovery in aid of a proceeding at law, the in-
terrogatories addressed to him must have exclusive reference
to the matters alleged to rest exclusively, in his knowledge
and that of the party calling for his testimony, and his
answers, so far as responsive to such interrogatories, but no
farther, must be evidence. If he has paid or discharged the
demand in reference to which he was sworn and interro-
gated, he may state that fact, and such statement will be
responsive to the questions propounded to him. But if he
only claims that he is not legally bound to pay such demand,
by reason of his having a subsisting account or set-off
against the party calling on him to testify, he cannot proceed
to establish such account or set-off by his own oath, by vir-
tue of his having been sworn at the instance of the adverse
party."

Nor is this rule confined in its application to answers to bills of discovery merely, as supposed by the appellees' counsel, although in other proceedings in Chancery for relief, the appeal to the conscience of the defendant is not, as in case of bills of discovery, made *ex necessitate rei,* but grows out of the very nature of the tribunal whose aid is invoked as a court of conscience, yet the operation of the defendant's answer is in both cases the same. His statements in either case are supposed, so far as they respond to the allegations of the bill, to be made not of his own volition, but in obedience to the requisition made upon him by the complainant, for the disclosure of facts resting within his knowledge, and affecting the complainant's right to a judgment at Law or a decree in Equity, as the case may be. He is made *pro hac vice,* the complainant's witness, and, therefore, the testimony given by him in that capacity may not be rejected at complainant's instance.

The Circuit Court, therefore, erred in refusing the instruction asked for by the appellant's counsel, and were this a proceeding at law, that error would have entitled the appellant to a new trial in that Court, and in this, to have the judgment reversed, and the cause remanded for a *venire de novo,* unless it had further appeared from the record, that the allegations of payment in appellant's answer had been disproved by other testimony, but as will be shown presently, it is within the power of this Court to correct the erroneous action of the Court below, by reforming its decree, if there be enough apparent upon the record to enable us to do so; and looking at the interests of both parties, and consulting their wishes as expressed by their respective counsel on the argument, it is perhaps our duty to make such disposition of it.

Then, have we such light before us as may guide us, in our investigation of the rights of the parties involved in this controversy, to a correct conclusion?

The appellant, not relying alone on the efficacy of his own answer as evidence of his claim for payments therein made, chose to submit it as well as his demand for set-off to the test of his adversaries' oath, by interrogating them in

his answer in reference thereunto. Then considering the answer so far as such interrogatories are concerned, as in the nature of a cross bill, and the answer of the appellees thereto, as evidence of the matter contained in it, so far as responsive to those interrogatories, it remains to be seen whether such answer of the appellees contains any statement invalidating the appellant's claim for payments, already established *prima facie*, by his own answer.

The appellees, after admitting in their answer specific items of appellant's account for payments, amounting to the sum of $1406·21½, go on to say, "Complainants further say that they have no account of the amount of payments as charged in said schedule or bill of particulars; but after an inspection of the orders drawn by them, (complainants,) on the said Garrett, and such memoranda of their own as they have had opportunity to inspect, and the pass-books, so called, of the defendant, they admit the charges above herein indicated, but they have no means of determining as to any other of the items in said schedule or bill of particulars charged, and they, therefore, deny the same and call for the proof thereof."

This hypothetical impeachment of appellant's account for payments, neither destroys nor in any wise affects the evidence supporting it, as found in appellees' answer, while it does not render the statement itself admissible in evidence, as contradictory of appellant's answer, it is insufficient to create the necessity for corroborating that answer by evidence *aliunde*. For such purpose, there should have been a direct and unqualified denial of appellant's claim, and not such a halting, evasive negation of appellant's affirmation, as that under consideration, and which indicates a disposition on the part of the appellees, while they cannot conscientiously say that the appellant's demand is unjust, unconcientiously to require him to prove that it is just. Such mental reservations as seem to lurk in this answer, Equity abhors. If made, or appearing to be made, as in this case, they bring with them no immunity to him who uses them; nothing

of inconvenience to his adversary. 6 Har. & Johns. 288, 291; 1 Paige, 210.

It follows from this view of the subject, the evidence found in the appellant's answer in support of his account for payments to appellees remaining unshaken by any thing contained in appellees' answer, and there being no other evidence contradictory of it, that his claim to an allowance to the full amount of that account was thereby fully substantiated.

But in addition to this, looking at the character of this entire transaction, the manner of appellant's making his payments from time to time, and preserving his evidences thereof, the admissions of the appellees, as proved by several witnesses, of the correctness of portions, if not of the whole of appellant's account, and the great difficulty necessarily to be encountered in making absolute proof of every item of such an account, and I think the appellant's claim to its allowance, is fully sustained by the other testimony in the cause, as shown in the bill of exceptions, and wholly irrespective of his own answer.

But not so as to the other items of appellant's account claimed by way of set-off. His answer, as has been shown, furnished no evidence to prove them; they are expressly denied by appellees' answer, and there was no testimony offered to sustain them; therefore, they were properly disregarded by the jury.

It being thus determined that the whole account of appellant for payments should have been allowed him, and not merely the amount found by the jury, and the appellant, (as has been shown,) having admitted that the evidence heard on the trial on the part of appellees was sufficient to sustain the verdict, except as to the appellant's account, it might be supposed that no difficulty could be encountered in determining what modification should be made by this Court of the decree of the Court below. It would seem to follow, as a corollary, that our inquiry for the purposes of such modification would have exclusive reference to the amount

of appellant's account, and could in no wise affect the finding of the jury as to the amount of appellees' account, and consequently that the decree of the Circuit Court should be reformed, by deducting from the sum found by the jury in favor of the appellees an amount equal to the difference between the amount of appellant's payments, which should have been allowed him, and the amount which by the verdict was allowed him. And such would be the result, were the matter unembarrassed by other considerations than the mere determination of the state of accounts between the parties, as proved on the one hand, and admitted to have been proved on the other. But it is not thus unembarrassed, and the difficulty already overcome, in determining that there should be some modification of the decree, is no greater than that yet to be encountered, in determining what the extent of that modification should be.

This difficulty finds its origin in several circumstances:

1. Although the appellant, having admitted the sufficiency of the appellees' testimony to sustain the finding in their favor, so far as their account against him was concerned, is now estopped from mooting that point, yet he is at liberty to show, and does show another good and sufficient reason why the amount of that finding should be reduced, independently of his, (appellant's,) account. He shows by the record, that the verdict is in several respects broader than the claim of appellees, as exhibited by their petition and amended petition. This is complained of in the ninth error assigned, and will be more fully noticed presently.

2. The jury, as appears from their verdict, would seem to have allowed interest on the appellees' account, and if such allowance was made, and was not authorized by law, a deduction must of course be made therefor.

I will now proceed to demonstrate these positions, and so far as the means within my reach will enable me to do so, to place this case in the position, which justice and the rights of the parties demand that it should occupy.

*First.* The finding of the jury in favor of the appellees

exceeded their demand. As to the quantity of brick furnished by appellees, the number of brick found by the jury was 682,098

The appellees claim in their petition, as appears by reference thereto, and to their bill of particulars, as

| | | | |
|---|---|---|---|
| Laid in the house, | | 575,000 | |
| " " | privy, | 45,000 | |
| " " | ice house, | 13,500 | |
| " " | cistern, | 3,000 | |
| " " | front wall, | 7,000 | |
| In all amounting to | | | 643,500 |

And leaving over appellees' claim an excess of 38,598

In their amended petition, they claim as having been laid in the house, 600,000, leaving the other items precisely as stated in the original petition. This would swell their claim to the extent of 25,000, which, deducted from the excess found in their favor according to the claim of the original petition, to wit, 38,598, still leaves the excess in the verdict over their claim to the amount of 13,598 brick.

The amount of deduction to be made from the sum found by the jury to be due from appellant to appellees, is in reference to this excessive finding as to brick, easily ascertained. The prices charged by the appellees for their brick, (as appears by their original and amended petitions,) and which were of course allowed by the jury, were for the 600,000 laid in the house, at the rate of $4 per M. and for the residue $5, but as will be presently shown they probably estimated the whole number found at $4. The excess of 13,598 found by the jury is, therefore, to be estimated at $4 per M. and shows the amount of deduction to be made on that account, to be $54·39.

*Second.* The jury found the plastering done to amount to 6,112 yards.

The appellees claim, inclusive of 400 yards of rough coating in the ball room, only 4,400 "

Making an excess in favor of appellees of 1,712 "

The price at which this plastering was probably estimated by the jury, was 21 cents per yard. This appears from the statement in a bill of exceptions taken by the appellees, that 400 yards of two coat plastering was proved on the trial, and more than 4000 yards of three coat; of course showing all over 400 yards to have been of the latter character. The price charged for it in the petition was that above stated, (21 cents per yard.)

The excess found in favor of appellees, viz: 1712 yards at 21 cents, amounts to  $359·52

To which add the value of the excess of brick, as estimated above,  54·39

And it shows an allowance by the jury, exceeding appellees' claim, of  $413·91

It may here be remarked, that it appears by reference to the bill of exceptions, that the Circuit Court fixed the excess of brick found by the jury in favor of appellees over their claim at 11,598; and of plastering, as found by this Court, at 1712 yards, and for the value thereof, with interest, deducted as already appears by a recital of its decree, the sum of $514·86.

I have shown that the entire account of appellant for payments under his contract was proved, and should have been allowed by the jury:

It amounted to  $2673·23
He was allowed only  1776·00

Showing an error against him of  $897·23

To this add the excess allowed for brick and plastering, as shown above,  413·91

And it appears that the sum of  $1311·14
was found against him by the jury, against the law and the evidence. This sum, therefore, should certainly be deducted from the balance found by the jury to be due from the appellant to the appellees, for work done and materials

furnished under the contract. It remains to be seen whether any further deduction should be made or not.

As already said, it would seem from the language of the verdict, that the jury allowed interest on the appellees' account, and hence the inquiries arise, was any such allowance made? If so, was it authorized by law? And if made, and not authorized by law, what was the amount, thus improperly allowed? A negative answer to the first of these questions, would, of course, supersede the necessity of examining or deciding either of the others.

For the solution of these questions, we find in the record the most abundant data. The jury not only find, that upon the whole case, the appellant owes the appellees a certain sum of money for work done and materials furnished under the contract, but they likewise exhibit the grounds on which they base that result.

On the one hand, they find as to two items of the appellees' account, (brick and plastering,) the quantity of materials found and work done under the contract, and as to the remaining items, the value thereof in terms; thus furnishing the means of ascertaining the whole amount of the appellees' account, as estimated by them; while on the other hand, they show the amount of credits to which appellant is entitled upon that account.

Then by adding to the sum specifically found due to appellees, that which would arise from a computation of the value of the brick and plastering found to have been furnished and done, at the prices fixed thereupon by the contract, or shown by the bills of exceptions to have been probably allowed by the jury, we have the gross amount of appellees' account; and deducting therefrom the amount of credits allowed appellant by the jury, and the result shows the balance due from appellant to appellees, according to the finding of the jury. If that balance be less in amount than the balance found due upon the whole case, by the verdict, from the appellant to the appellees, then to the extent of that deficit interest was allowed; but it was other-

wise if there was no such deficit.   Let us examine the mat-
ter by that test.

The jury allowed for 682,098 brick; the price claimed in
the petition was for 600,000 at the rate of $4 per M. ma-
king                                                       $2400·00
For the residue $5 per M. amounting to                      410·49
They also found 6,112 yards of plastering to have
  been done; of this, all but 400 yards, viz: 5,712
  yards was three coat work, for which appellees
  claim in their petition 21 cents per yard,                1199·52
The 400 yards were one or two coat work, and it
  was proved, as appeared by the bill of excep-
  tions, to have been worth half as much as the
  other, viz: 10 cents per yard,                              42·00
They also found for furring, lathing, &c.                    403·37
                                                            ───────
                    In all,                                 4455·38
They found appellant entitled to credits of                 1776·00
                                                            ───────
This leaves a balance against appellant of                 $2679·38

But looking at the result, and we are brought to the con-
clusion that the jury allowed for all of the brick, only $4
per 1000.  If so, we should make a deduction from the
balance above stated, of $1 per M. on 82,098 brick, to
wit: $82·09, and thus a balance would remain against the
appellant of $2597·29, differing only to the extent of $2·09
from the balance as found by the jury.   Then who shall say,
that to make up the balance ascertained by the verdict, the
account of the appellees was swollen by the allowance of
interest?   To my mind, it is clear that such was not the case.

It will be recollected, that the calculations made in esti-
mating the value of the excess of brick and plastering found
by the jury for the purpose of a reduction *pro tanto* of the
amount of indebtedness fixed upon the appellant by the ver-
dict, was based upon the same hypothesis as to prices, that
the above calculations are:

The result is, that from the balance found by the jury against appellant, viz:                          $2595·20

There is to be deducted the sum already found of     1311·14

Leaving against appellant a balance of           $1284·06 for which the decree of the Circuit Court should have been rendered.

These questions being settled, but very little remains to be said of the errors assigned by appellant, yet to be disposed of.

The power and duty of this Court to correct the proceedings of the Circuit Court, and upon the state of case made by the whole record, to reform its decree, without reversing it and remanding the cause appearing, it follows that the third and eleventh errors in the order of assignment, assuming that the refusal of the Court to grant a new trial or arrest the judgment, so vitiated its decree as to require its reversal, are untenable. It may not, however, be improper here to add a few suggestions on that point.

In Courts of Law, the agency of juries is indispensable. Their province is to determine the facts of the case, that of the Court, to settle the law arising on such facts. Hence the right of trial by jury in such Courts is secured by Constitutional guaranty, and a verdict being found there as to material facts submitted for the settlement of a jury, the Court, in the rendition of its judgment, may not disregard such finding. If, in the estimation of the Court, it is wrong either as to law or evidence, the Court can avoid it only by setting it aside, and granting a new trial, or by arresting the judgment. The refusal to do so, is, in this State, assignable for error by statutory enactment. But in the machinery of Courts of Equity, no such agency is necessary. This results from the constitution of such Courts, and the peculiar character of its jurisdiction. Every question made before it is supposed to be addressed to the conscience of the Chancellor, and the law and facts involved in any such question,

must necessarily be determined by him; therefore, when in complicated cases of account or fraud, the aid of a jury is invoked by the Chancellor, it is only to advise his conscience, and the verdict being rendered, is not conclusive upon him, nor necessarily to govern in the rendition of his decree. Its office is not to settle the facts, but to aid him in their ascertainment that he may settle them. Then, although, the Chancellor undoubtedly may set aside a verdict, and order another trial by a jury, yet this should be of his own mere motion the better to satisfy him as to the matters of fact in issue, and not as a matter of right, on the motion of either party. But the Chancellor rejecting the verdict, so far as inconsistent with the issues or incompatible with the testimony, may go on to dispose of the case, as equity and justice may demand, without either granting a new trial or arresting the judgment, as in a Court of Law in such cases might be necessary. Consequently, his refusal to do so is not assignable for error.

This view of the subject disposes of most of the remaining errors assigned, based as they are upon objections to the verdict or the decree. The sixth, seventh, ninth, (which has already been fully considered,) and thirteenth, respectively complain of defects in the verdict, which, in a proceeding of law, would have vitiated it, and required the Court to grant a new trial, or arrest the judgment; and the fourth and twelfth attack the decree, for being rendered on a verdict so defective; but while the power of the Court below to render its decree according to the justice of the case, was left unimpaired by the defects in the verdict, either in not finding as to matters that were in issue, or in finding as to matters which were not in issue; or in allowing more than was claimed by the appellees, this Court possesses plenary powers to correct any defect or error found either in the verdict or decree, and thus to do justice between the parties.

With this general view of the subject, I might, perhaps properly, dismiss the further consideration of the assignment of error, but there are several points demanding a more specific notice.

*First.* There was no finding by the jury, nor decree by the Court as to the defendant, Mary G. Garrett, as alleged in the seventh and twelfth errors assigned, but these assignments of error, although true in point of fact, are unsound in law. Even if such defect could be made the ground work here of an attack upon the decree below, as I have already shown it cannot, still it would be wholly immaterial.

The only object of the appellees in making the said Mary G. Garrett a party to this proceeding, as appears by their amended petition, was to subject the fee simple estate in the lots improved by them to sale, for the enforcement of their lien; for that purpose, alleging such estate to be in her, the said Mary, but that the equitable estate therein was in the appellant.

This allegation was contradicted by the appellant and his co-defendant, only in so far as it claimed that the former was the owner in equity of the lots in question. Upon that point no evidence was adduced by the appellees to sustain their allegations; consequently no finding, as against Mary G. Garrett, was necessary. But it would have been proper that the Circuit Court should have dismissed the bill as to her, and the defect in their decree in omitting to do so must be rectified here.

*Secondly.* The estate of the appellant in the lots in question was not determined by either the verdict or the decree as urged in the thirteenth error assigned.

This objection, the appellant's counsel seem to consider fatal to the appellees' right to enforce their lien against said property, but it is not so. It does sufficiently appear by the pleadings and proofs, that the said property was owned, in fee simple, by the said Mary G. Garrett, the wife of the said appellant, and consequently, that he owned an interest therein, less than the fee simple. What that interest may be, whether it simply embrace the rents and profits during the coverture, or shall ripen into an estate for life, by reason of his surviving his said wife, and thus becoming tenant by the curtesy, is immaterial. Whatever it is, or may be, the appellees are entitled to the full benefit of it, for the pay-

Garrett *v.* Stevenson *et al.*

ment of their demand against the appellant, for the improve-
ments put by them upon the property in which it exists, in
pursuance of their contract with him.

This disposes of the entire assignment of errors except the
fifth and eighth; and of them, it is only necessary to say, that
the appellant does not rely on them, and moreover, that for
anything that appears to us, they ought not to affect the re-
sult in any respect.

And now, having eliminated from the great mass of matter
embodied in the record, those few prominent points, around
which the controversy of the parties seemed to settle, and
shown wherein the results of such controversy in the Court
below were otherwise than they should have been, it only
remains for this Court, by its final decree, to apply the proper
corrective to the evils growing out of those erroneous re-
sults.

It is the opinion of the Court, that there was no error in
the decree of the Circuit Court, in allowing enforcement of
appellees' lien upon the appellant's interest in the lots de-
scribed in the petition, for the balance due upon the demands
exhibited by them for materials furnished and work done by
them, in pursuance of their contract with said appellant, but
that in the amount of said balance as fixed by said decree
there was, and that in that particular said decree should be
reformed.

It is therefore ordered, adjudged and decreed, that the
said appellees do have and recover of the said appellant, the
sum of twelve hundred and eighty four dollars and six cents
for materials furnished and work done by them in and about
the erection of a certain building upon the lots in the peti-
tion mentioned, to wit: Lots No. four and five, in block No.
eight, in the town and county of Peoria, in pursuance of their
contract with said appellant; and also their costs by them
about their suit in this behalf in the Court below expended.
And that said appellees have their lien upon the legal and
equitable interest of the said appellant in and to the afore-
said lots and improvements thereon; and that, for the satis-
faction of the aforesaid sum of $1284·06, with interest

thereon at six per cent. per annum from April 14th, 1846, the date of the decree in the Court below, and costs, the same be sold; and that special execution for the sale thereof issue to the sheriff of the aforesaid county of Peoria.

And it is further ordered, adjudged and decreed, that if the proceeds of such sale shall be insufficient to pay and satisfy the aforesaid sum of $1284·06 and costs, the said appellees shall have their execution for the balance therof then remaining due, against the goods and chattels, lands and tenements of the said appellant, as upon a judgment at law. And if the proceeds arising from such sale shall exceed the amount of the aforesaid sum of money and costs, the excess shall be paid to the said appellant.

It is further considered, that the appellant recover of the appellees his costs by him about his suit in their behalf in this Court expended.

And as to the defendant, Mary G. Garrett, it is decreed that the amended petition be dismissed, and that she recover her costs, &c.

*Decree amended.*